WHITBECK, executor, &c. and others, *appellants, vs.* PATTER-
SON, *respondent.*

To constitute a legal and valid execution of a last will and testament, the four
facts specified in the revised statutes, (2 *R. S.* 63, § 40,) must exist, and the
acts therein directed be fully and completely performed.   The statute is
peremptory, and no evasion or omission can be excused or tolerated.

A testator signed his last will and testament, at the house and in the presence
of the person who drew it, but who did not sign it as a witness; after the will
was signed, the draughtsman and the testator went together to a store in the
neighborhood, where they found three persons, whom the draughtsman, in the
presence of the testator, requested to sign an instrument, which he said was
the testator's last will and testament.   He then read the attestation clause,
and asked the testator if that was his last will and testament; and the tes-
tator said it was.   The three persons then signed it as witnesses.   None of
them saw the inside of the will, or the signature of the testator, nor did
they know what it contained.   The testator did not request the witnesses to
subscribe it as such.   One of the subscribing witnesses testified that the
draughtsman said the will was signed at his house, by the testator, and the
testator said that he signed it; that this was said about the time the testator
said it was his last will.   But both the other subscribing witnesses, as well
as the draughtsman, concurred in stating that the testator said nothing
about his signing it; and they all agreed that he did not sign it at the time
it was witnessed.

*Held,* 1. That the provision of the statute requiring the signature of a testator
to be put to his will in the presence of the witnesses, or the alternative of
his acknowledgment of his signature, had been substantially and in fact
complied with.

2. That a will so executed ought to be admitted to probate.

3. That the reading of the attestation clause in the will, in the presence of the
testator as well as the witnesses, followed by his affirmation that it was his
last will and testament, was a complete fulfillment of the requirement of the
second subdivision of the fortieth section of the statute on that subject.

THIS was an appeal from a decree of the surrogate of the
county of Monroe, adjudging null and void, as not executed and
attested in the manner prescribed by law, an instrument in
writing, offered for probate and record, as the last will and tes-
tament of William Patterson, deceased.   All the material facts
are sufficiently stated in the opinion of the court.

Whitbeck v. Patterson.

*L. Adams,* for the appellants.

*H. K. Jerome,* for the respondent.

*By the Court,* TAYLOR, J.  William Patterson executed an instrument purporting to be his last will and testament, dated December 30, 1847.  It was signed by him, with a seal affixed, and witnessed after the usual attestation clause, by the names of three witnesses.  To superficial inspection, the will is executed in full accordance with the provisions of the revised statutes.

When the document, however, was brought before the surrogate for probate, it appeared from the testimony of Volney Hughes, (not a witness to the will,) that he drew it at the request of Mr. Patterson; that Patterson knew its contents, signed it, and went with him to the store of one Hunt, for the purpose of having it witnessed; at the store they found the three persons who signed as witnesses.  These witnesses agree in the facts, that Patterson and Hughes came into the store together; and as they came in, Hughes spoke to them, saying, that he had a paper that he wished them to sign; that it was Patterson's last will and testament; that Hughes thereupon read the attestation clause, and then asked Patterson if that was his last will and testament; to which he replied that it was.

One of the witnesses (Cady) further swears, that he thinks the question was then asked him (the testator) about his signing it, and Esqr. Hughes' reply was, that "he signed it up to my house;" to which Patterson said "Yes."  This, however, was not recollected by the other witnesses, and Hughes declares, with a good deal of confidence, that nothing was said in the store about his having signed it.

The surrogate refused to admit the will to probate, on the ground that it was not executed and attested in the manner provided by law; and was therefore null and void, he not having complied with the 2d subdivision of section 40, art. 3, tit. 1, ch. 6, part 2 of the revised statutes; (2 *R. S.* 63;) which requires the testator either to subscribe the will in the presence

Whitbeck *v.* Patterson.

of each of the attesting witnesses, or to acknowledge to each of them that he did subscribe it.

The four facts specified in the subdivisions of that section must exist, and those acts therein directed be fully and completely performed. The statute is peremptory, and no evasion or omission can be excused or tolerated. Three of the requisites to the perfect execution of a will, do exist in this case ; and it is now the question whether that requiring the signature of the testator to be put to the will in the presence of the witnesses, or the alternative of his acknowledgment of his signature, has been substantially and in fact performed.

If the testimony of Cady were unquestioned, I think the case would not admit of a doubt. But as there is some reason to suppose he may have been mistaken in this, that Patterson said that he had signed it, I shall examine the case as depending upon the facts sworn to by all the witnesses.

When the testator and Hughes had arrived at the store of Hunt, for the express purpose of having the will properly executed and witnessed, and the persons there had been requested to sign, as witnesses, the paper which Hughes held in his hand and declared to be Patterson's last will and testament, Hughes read the attestation clause in the hearing of Patterson as well as the witnesses, which was in the common form, namely, "signed, sealed, published and declared by the testator to be his last will and testament, in the presence of us, who, at his request and in his presence, and in presence of each other, have subscribed our names as witnesses." Hughes then asked Patterson if this was his last will and testament, and he said that it was.

The statute does nowhere specify the particular mode or form in which the acknowledgment shall be made. It is not required to be done in words ; but in the case of a mute or other person who can not articulate or write, it may be expressed by signs.

Hughes was acting in the matter, avowedly as the friend or agent, and at the request, of Patterson. Let us suppose, then, that Patterson had done for himself what Hughes did for him ;

and this is in accordance with the law maxim, founded upon good reason and good sense. *Qui facit per alium, facit per se.*

Patterson then would take the will in his hand, and to call attention to it, declare it to be his last will and testament; then read the attestation clause, " signed, sealed, published and declared by me to be my last will and testament," and then request the witnesses to affix their names. Could any one in that case gainsay the acknowledgment of Patterson as being fully sufficient to meet the requirements of the law? I think that the reading of that clause, in the manner proved, in the presence of the testator as well as the witnesses, followed by his affirmation that it was his last will and testament, was a complete fulfillment of the requirement of the 2d subdivision of the 40th section of the statute.

In this view of the case I am fully sustained by Senator Verplanck, in giving his opinion in the case of *Remsen* v. *Brinckerhoff*, (26 *Wend.* 338.) " Here," says the senator, " the evidence shows conclusively that the testatrix made no verbal declaration to the witnesses; did not cause them to read any written declaration, nor in any other way render it clear that she might not have thought the instrument signed and acknowledged was a deed or lease instead of a will. There was at the end of the instrument an attestation clause, setting forth in the customary form, that the testatrix "acknowledged to each witness that she subscribed the same and declared it to have been her last will and testament." This, if the witnesses had been asked to read it by the testatrix, or in her hearing, would have been a silent but clear declaration."

Now this very thing, though in other words, yet words of the same import, which the senator says would have been a silent but clear declaration, happened in the case before us. The case, also, of *Burdett* v. *Doe, dem. Spilsbury*, (7 *Scott's New Rep.* 66,) goes very far to sustain the same view.

The decree of the surrogate of Monroe county must be reversed, and the surrogate ordered to take probate of the will.